JAMES CARL AND DIANNE STALLINGS FULKERSON, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Fulkerson v. Commissioner
Docket No. 18866-89
United States Tax Court
T.C. Memo 1990-276; 1990 Tax Ct. Memo LEXIS 294; 59 T.C.M. (CCH) 784; T.C.M. (RIA) 90276; June 4, 1990, Filed James Carl Fulkerson, pro se. William Reese, for the respondent. COUVILLION, *296 Special Trial Judge. COUVILLION
MEMORANDUM FINDINGS OF FACT AND OPINION This case is before the Court on the motion of petitioners for litigation costs under section 7430 [1] and Rule 231. Respondent determined a deficiency of $ 115 in petitioners' 1986 Federal income tax and additions to tax under section 6653(a)(1)(A) and (a)(1)(B), respectively, of $ 6 and 50 percent of the interest payable under section 6601 with respect to the portion of the underpayment attributable to negligence. When this case was called for trial, the parties orally stipulated a basis of settlement as to all adjustments in the notice of deficiency. Petitioners moved for recovery of litigation costs under section 7430 in the amount of $ 60, representing the fee paid to this Court for filing the petition. Petitioners' *297 entitlement to costs, therefore, is the only issue before the Court. FINDINGS OF FACT At the time the petition was filed, petitioners were residents of Aptos, California. During 1986, petitioners maintained accounts with an investment brokerage firm, Dean Witter Reynolds, Inc. (Dean Witter). Petitioners received a Form 1099 from Dean Witter for 1986 which reported taxable interest income of $ 162.90 and gross dividends of $ 178.87. The Form 1099 indicated that the entire amount of dividends were "dividends qualifying for exclusion." On their 1986 joint Federal income tax return, petitioners failed to report the $ 162.90 interest income and the $ 178.87 dividends from Dean Witter. Petitioners thereafter received from the Internal Revenue Service (IRS), Fresno, California, Service Center (Fresno) a Form CP-2000, Notice of Proposed Changes to Income, Payments, Credits, or Deductions, dated January 11, 1989, proposing an increase in their 1986 tax of $ 115 due to the omission from income of $ 162 interest and $ 178 dividends, and proposing an addition to tax for negligence of $ 6 under section 6653(a)(1)(A) and $ 11 under section 6653(a)(1)(B). On or about April 20, 1989, petitioners *298 mailed to the IRS at Fresno, a letter wherein they conceded their failure to report the interest income, conceded the additions to tax for negligence with respect thereto, and conceded that, although the dividends should have been reported on their return, these dividends were not taxable by virtue of the $ 200 exclusion under former section 116(a). Petitioners enclosed a check for $ 68 with their letter, which represented the additional tax, the additions to tax, and interest with respect to the omitted interest income, as computed by petitioners' accountant. Petitioners contend that a copy of the Form 1099 was attached to their letter; however, respondent contends that no such copy was attached. On May 3, 1989, respondent issued from Fresno the notice of deficiency, determining a deficiency in tax and additions to tax for negligence based on the same items and in the same amounts as proposed in the Form CP-2000 dated January 11, 1989. The notice did not acknowledge, refer to, nor take into account petitioners' concession of the interest income or the negligence addition, or the $ 68 payment as reflected in their letter of April 20, 1989. The reverse side of petitioners' canceled *299 check for $ 68, however, bears an endorsed date stamp of May 8, 1989, some five days after issuance of the notice of deficiency. It is clear, therefore, that the notice of deficiency was issued by respondent without knowledge of petitioners' concessions or payment. Petitioners believed that the notice of deficiency would be withdrawn after respondent realized that petitioners had conceded and paid the tax and additions to tax with respect to the unreported interest income, and that the dividends were clearly excludable under section 116(a) as shown on the Form 1099 furnished to the IRS. After waiting approximately one month, on June 5, 1989, petitioners sent a second letter to the IRS at Fresno by certified mail. In this letter, petitioners enclosed copies of their letter of April 20, 1989, the Form 1099 reporting the dividends as "dividends qualifying for exclusion," the notice of deficiency, and their canceled check for $ 68. Respondent acknowledges receiving this letter and agrees that a copy of the Form 1099 was enclosed. On June 21, 1989, the IRS replied to petitioners' first letter of April 20, 1989, by a form letter which stated that the information submitted with the *300 April 20th letter did not warrant a change in the proposed adjustment because the dividends had been reported to respondent by Dean Witter as nonqualifying dividends. This letter also stated that additional verification was necessary for a change in the deficiency to be authorized. It is evident, once again, that this letter was issued by respondent without knowledge of petitioners' second letter, dated June 5, 1989, in which a copy of the Form 1099 was enclosed. On June 27, 1989, petitioners wrote again to the IRS at Fresno, restating that the dividends qualified for exclusion and requesting a copy of the original Form 1099 filed with the IRS by Dean Witter, upon which respondent apparently based its position that the dividends were nonqualifying. At trial, petitioners submitted to the Court the copy of an IRS computer printout they received from the IRS, entitled "underreporter transcript," which referred to the $ 178 dividend paid by Dean Witter for 1986 as "NQDIV." Petitioners hoped to resolve the matter administratively and delayed filing a petition as long as possible. After receiving the June 21, 1989, letter and realizing that the 90-day filing period would soon expire, *301 petitioners filed their petition with this Court on July 31, 1989. Petitioners alleged that the entire deficiency of $ 115 was in dispute but conceded the interest income and the negligence additions with respect thereto. Petitioners further alleged that they were entitled to claim an overpayment of tax of $ 5,420 for 1986, based on an amended return filed with respondent. The claimed overpayment apparently arose from items unrelated to the determinations in the notice of deficiency. Shortly after filing their petition, petitioners received from the IRS at Fresno a letter dated July 28, 1989, responding to their second letter dated June 5, 1989, and the attached substitute Form 1099. This letter stated that the tax and additions to tax attributable to the omitted interest income had been assessed, and that petitioners' account had been credited for the $ 68 payment. This letter made no reference to the dividend income or whether the information petitioners had submitted was acceptable. On September 4, 1989, however, petitioners received a statement of account from the IRS at Fresno showing application of petitioners' $ 68 payment, $ 49 to tax and $ 8 to the additions to tax, *302 with a resulting overpayment of $ 11. A check in the amount of $ 13.73 was enclosed. Petitioners immediately contacted the IRS at Fresno by telephone and inquired as to why they were issued the refund check. Petitioners were advised that the $ 68 petitioners paid on April 20, 1989, resulted in an overpayment of tax and additions to tax of $ 11, and that the check was a refund of the $ 11 overpayment plus interest of $ 2.73. Petitioners were further advised that their account had been cleared, and no amounts were owned by them as to the dividend income. On September 25, 1989, three weeks after petitioners had been issued the refund check and were informed that they owed no additional amounts, respondent filed an answer in this case. The answer was filed by respondent's office at San Jose, California. In the answer, counsel for respondent entered a general denial, for lack of sufficient information, of petitioners' allegation that the dividends of $ 178 from Dean Witter were qualifying dividends. On October 12, 1989, respondent's appeals officer contacted petitioners by mail with respect to settlement of this case. On December 1, 1989, the appeals officer again contacted petitioners, *303 this time by telephone, and petitioners informed the appeals officer of all the facts and events having taken place to date. Petitioners were advised that this information would be looked into. On the same day, petitioners were called, and the appeals office of respondent agreed that there was no tax due because the dividends qualified for exclusion, apparently based on the Form 1099 petitioners had submitted with their second letter dated June 5, 1989. When this case was called for trial on January 22, 1990, the parties orally stipulated that all issues in the case had been settled except petitioners' claim for litigation costs. Petitioners failed to raise their claimed overpayment of taxes for 1986 or offer proof of any fact or issue with respect thereto. Respondent did not concede the alleged overpayment. Accordingly, the overpayment claim is deemed abandoned by petitioners. Rule 149(b). OPINION In the case of any administrative or court proceeding brought by or against the United States in connection with the determination, collection, or refund of any tax, interest, or penalty, the taxpayer may be awarded a judgment for (1) reasonable administrative costs incurred in *304 connection with such administrative proceeding within the IRS, and (2) reasonable litigation costs incurred in connection with such court proceeding. Section 7430(a)(1) and (2). [2] A judgment may be awarded only if the taxpayer was the "prevailing party" and "exhausted administrative remedies available to such party within the Internal Revenue Service." Section 7430(a) and (b)(1). Respondent does not contend that petitioners did not exhaust administrative remedies available to them within the IRS. Accordingly, the issue for decision is whether petitioners were the prevailing party. This Court has jurisdiction to determine whether petitioners were the prevailing party because the final determination with respect to the tax, interest, and the addition to tax were not made at the administrative level, but by stipulation of the parties at trial, thus constituting a final determination made by a court within the meaning and intent of section 7430(c)(4)(B)(ii). *305 A taxpayer is considered the prevailing party only if it is established that: (1) the position of the United States in the proceeding was not substantially justified; (2) the taxpayer has substantially prevailed with respect to the amount in controversy or the most significant issue or set of issues presented; and (3) the taxpayer had a net worth not in excess of 2 million dollars at the time the proceeding was commenced. Section 7430(c)(4)(A). When questioned as to which of these requirements were at issue, respondent advised the Court that only the first two of these requirements were not satisfied by petitioners. The third requirement, therefore, has been conceded by respondent. Accordingly, the specific questions are (1) whether "the position of the United States in the proceeding was not substantially justified," and (2) whether petitioners have "substantially prevailed" in this case. The decision whether respondent's position was not substantially justified requires the Court to first identify the point in time at which the United States is considered to have taken a position, and second to decide whether the position taken from that point forward was not substantially *306 justified. Section 7430(c)(7) establishes three demarcation points, the earliest from which the United States is considered to have taken a position: (7) Position of the United States. -- The term "position of the United States" means -- (A) the position taken by the United States in a judicial proceeding to which subsection (a) applies, and (B) the position taken in an administrative proceeding to which subsection (a) applies as of the earlier of -- (i) the date of the receipt by the taxpayer of the notice of the decision of the Internal Revenue Service Office of Appeals, or (ii) the date of the notice of deficiency.
Petitioners were clearly involved in an administrative proceeding under section 7430(c)(7)(B), broadly defined as "any procedure or other action before the Internal Revenue Service." Section 7430(c)(5). No notice of decision of the IRS appeals office under section 7430(c)(7)(B)(i) was received by petitioners prior to the date of the notice of deficiency. The position taken by respondent in this judicial proceeding under section 7430(c)(7)(A) after the petition was filed was preceded by the issuance of the notice of deficiency. Therefore, the *307 United States is considered to have taken a position on May 3, 1989, under section 7430(c)(7)(B)(ii), the date of the notice of deficiency, and it is from this date forward that the Court must decide whether respondent's position was not substantially justified. The decision whether respondent was not substantially justified turns on a finding of reasonableness, based upon all the facts and circumstances, as well as the legal precedents relating to the case. , affd. .The Court must "consider the basis for respondent's legal position and the manner in which the position was maintained." .The fact that respondent eventually loses or concedes the case does not establish an unreasonable position. ; , revd. on other issues .The reasonableness of respondent's position and conduct necessarily requires considering what respondent knew at the time. Cf. ; *308 .Petitioner has the burden of establishing that respondent's position was unreasonable. Rule 232(e). In this case, the reasonableness of respondent's position turns solely on a dispute as to facts, when such facts were known to respondent, and whether respondent acted reasonably with respect thereto. Respondent's underreporter transcript showed that the dividends were reported to respondent as nonqualified. The notice of deficiency was issued based on this information. The period of time between the mailing of petitioner's first letter, April 20, 1989, and the date of the notice of deficiency, May 3, 1989, was approximately two weeks. The date stamp on the reverse side of petitioners' check was a date subsequent to the date of the notice of deficiency. Based on this evidence, the Court finds that, at the time the notice of deficiency was issued, respondent had not received petitioners' first letter. The underreporter transcript which reported petitioners' $ 178 dividend as nonqualifying was a sufficient basis upon which to issue the notice and, uncontradicted by any other evidence, respondent was substantially *309 justified in the position taken. Even if respondent received petitioners' April 20, 1989, letter prior to issuing the notice of deficiency, petitioners have not established that the Form 1099 was attached or that the contents of that letter made respondent's position unreasonable. Petitioners' April 20, 1989, letter stated that "there would be no tax on the $ 178," but contained no reference to any attachments. The June 5, 1989, letter, however, clearly referenced the attached Form 1099. Petitioners did not explain why they referred to the attachment in one letter but not the other, if the Form 1099 was actually attached in both letters. The position taken by respondent as of the date of the notice of deficiency, therefore, was not unreasonable and was substantially justified. The inquiry, however, does not end here. If respondent became aware of facts which establish that an earlier position was erroneous, and respondent failed to change that position or investigate further, the continuing maintenance of the erroneous original position may not be reasonable. See ; . *310 On June 5, 1989, almost four months before respondent filed the answer, petitioners submitted the Form 1099 to respondent. At trial, respondent conceded that the Form 1099 was attached to the June 5, 1989, letter. Further, respondent issued petitioners a refund due to overpayment of the amounts assessed. Respondent, therefore, may have already administratively sustained petitioners prior to the time the answer was filed. In the answer filed on September 25, 1989, however, respondent denied for lack of sufficient information that petitioners were entitled to an exemption for the $ 178 dividends. Rule 36(b) provides, inter alia, that, if respondent is without knowledge or information sufficient to form a belief as to the truth of an allegation, he shall so state and such statement shall have the effect of a denial. This Court has recognized that, in many cases, district counsel does not have access to the administrative file of a case prior to the time an answer is due to be filed, or simply that district counsel may need time to verify that the allegations in the petition are true. In such cases, it is not unreasonable for district counsel to deny the allegation for lack of *311 sufficient information. .Petitioners have not established that this was not such a case, especially considering that petitioners' case was still being considered administratively at Fresno until at least September 4, 1989, just three weeks before the answer was filed. On this record, respondent's denial for lack of sufficient information in the answer was not unreasonable because petitioners have not established that repondent's district counsel in San Jose had knowledge or information sufficient to validate the truth of petitioners' allegations in their petition. Less than three weeks after the answer was filed, respondent's appeals office attempted to contact petitioners regarding settlement of the case. Apparently receiving no initial reply, the appeals officer telephoned petitioners and was then briefed on the situation. Upon learning of the history of the case and after verifying the information obtained from petitioners, the appeals office promptly and diligently conceded the issue. Respondent's conduct after the filing of the answer in this case, therefore, was reasonable. Petitioners' motion for litigation *312 costs is, therefore, denied. Having found that respondent's administrative and litigating positions were substantially justified, there is no need to determine whether petitioners substantially prevailed in this case. An appropriate order will be issued.
Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code, as amended and in effect at all relevant times. All Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. Amendments made to section 7430 by the Technical and Miscellaneous Revenue Act of 1988 (TAMRA), Pub. L. 100-647, 102 Stat. 3342, 3743, apply to proceedings commenced after November 10, 1988. Because the petition was filed on July 26, 1989, the TAMRA amendments to section 7430 apply to this case.↩